# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DAPHNE JOHNSON** | * | **CIVIL ACTION NO. 12-1760** |
| **VERSUS** | * | **JUDGE HAIK** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Daphne Johnson, born April 30, 1960, filed an application for disability insurance benefits on March 19, 2010, alleging disability since February 2, 2010, due to spinal meningitis and nerve damage.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1]In her Reply, claimant indicates that the Commissioner awarded her benefits effective February 26, 2011, based on a subsequent application.  [rec. doc. 10].  For the purposes of this appeal, the relevant time period is thus February 2, 2010 (onset date) to February 25, 2011 (decision date).

Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from New Iberia Family Medicine Clinic dated May 22, 2009 to March 19, 2010**.  Claimant was seen on May 22, 2009, for followup after being discharged from the hospital on May 14. 2009, secondary to bacterial meningitis.  (Tr. 192).  She reported that she still had occasional headaches, but her pain was markedly improved.  She also complained of left knee pain for six days.  She stated that she was not ready to quit smoking or lose weight.

Dr. Cassandra Pilette's assessment was that claimant was doing well following her discharge for bacterial meningitis, and that her left knee pain was most likely musculoskeletal.  (Tr. 193).  She was given trials of Ibuprofen and Flexeril.  She was also assessed with tobacco abuse and obesity, with a BMI of 52.7.

On May 29, 2009, claimant reported mild improvement of her left knee pain with Ibuprofen and Flexeril.  (Tr. 190).  Her pain improved from 5/10 to 4/10 on pain scale.  She also stated that she was not ready to quit smoking or lose weight.

2

Dr. Pilette's assessment was mildly improved left knee pain, for which stretching exercises and weight loss were strongly encouraged.  (Tr. 191). Claimant also had newly diagnosed hyperlipidemia.  She had gained two pounds since her last visit.  She was doing well secondary to bacterial meningitis.

On July 9, 2009, claimant complained of continued left knee pain and bilateral leg cramping.  (Tr. 188).  Bilateral lower extremity venous ultrasound showed no evidence of acute deep vein thrombus, and arterial ultrasound was normal.  (Tr. 187).  Dr. Pilette continued her on Aleve for pain.

On July 23, 2009, claimant complained of headaches.  (Tr. 186).  An MRI of the brain taken on July 24, 2009, showed minimal deep white matter disease and  complete opacification of the left sphenoid sinus likely due to acute sinus disease.  (Tr. 185).  Otherwise, the MRI was normal.

The assessment was headaches and acute sinusitis.  Claimant was prescribed Ultracet for headaches.  Her left knee pain and bilateral leg cramping had resolved.  At her next visit, she reported that her headaches had resolved with Ultracet.  (Tr. 184).

On August 28, 2009, claimant reported that she had returned to work on August 24 without difficulty.  (Tr. 182).  She had no complaints.

On January 19, 2010, claimant reported that she had been compliant with her headaches and pain management appointments for spondylosis and headache, both of which had markedly improved.  (Tr. 172).  She had no complaints that day.  Her hyperlipidemia was uncontrolled.  (Tr. 173).  A 10% weight loss was strongly encouraged.

On January 25, 2010, claimant complained of diffuse muscle and joint pain for several months.  (Tr. 170).  She reported that the pain was 10/10 on pain scale.  She also complained of right-sided neck pain radiating down her right arm for several weeks.  On examination, her strength was 5/5, her neck had full range of motion, and she had no neurological deficits.  The assessment was myalgia, for which she was started on a trial of Lortab.  (Tr. 171).

On February 2, 2010, claimant continued to complain of diffuse muscle and joint pain.  (Tr. 168).  Cervical spine x-rays taken on January 29, 2010, showed suspect mild to moderate neuroforminal stenosis on the right at C3-C4 and C4-C5 and on the left at C3-C4 and moderate to marked at C4-C5, but were otherwise normal.  (Tr. 169).  Her chronic low back pain/headaches had resolved.  The assessment was right neck pain radiating down the right arm with disc disease.

An MRI of the cervical spine dated February 2, 2010, showed mild to moderate narrowing of the caudal aspect of the right C3-4 and C4-5 neural

4

foramen.  (Tr. 196, 228).  Dr. Boyd Snellgrove noted that although no significant nerve compression was seen, it did fit with claimant's symptoms.

An MRI of the left lower leg dated February 18, 2010, showed localized edema within a fat lobule, which was likely post-traumatic (contusion).  (Tr. 231).

On March 2, 2010, claimant was seen for sinusitis.  (Tr. 164).  She stated that Lortab was helping to alleviate her neck pain.  Her Lortab was continued.  (Tr. 165).

On March 15, 2010, claimant was evaluated by Dr. William Brennan, a neurosurgeon.  (Tr. 212).   Claimant had been referred by her primary care physician for complaints of right neck pain with right arm tingling and numbness, but claimant's chief complaint was leg and right side pain for a year.  She was taking Lyrica for the numbness and tingling, which she said had helped somewhat.  She also complained of severe lower back pain.  She smoked one pack of cigarettes per day.

On examination, motor strength was 5/5, deep tendon reflexes were 1+, sensory was intact, with the exception decreased pinprick sensation on claimant's right hand, straight leg raises were negative, and gait and station was good .  (Tr. 213).  An MRI showed a slight disc bulge at C5-C6 and degenerative disc disease.

Dr. Brennan opined that claimant's cervical spine was largely a nonsurgical problem.  He continued her on anti-inflammatories and Lortab for the degenerative changes in her cervical spine.  He ordered a lumbar MRI and recommended a cervical traction kit.

On March 19, 2010, claimant reported that she was seen by Dr. Brennan and given a prescription for cervical traction.  (Tr. 162).  She stated that her neck pain was improved with Lortab, and she was tolerating medication without any difficulty.  Her Lortab was continued.

**(2) Consultative Examination by Dr. Irene Ngantcha dated June 26, 2010**.  Claimant complained of a history of spinal meningitis, as well as nerve damage.  (Tr. 214).  She continued to experience headaches and pressure in the back of her eyes.  Additionally, she complained of an aching, constant back pain, 6/10, which was worse with standing and working for long.  She said that nothing made the pain better.  She also reported occasional headaches, for which she was not taking medication.  (Tr. 215).

Claimant believed that she could no longer work because of back pain.  She could dress and feed herself, stand at any one time for 10 to 15 minutes, for a total of about eight hours, walk on level ground for about 100 feet, sit for one to two hours, lift about 10 pounds, and drive at any one time for about one to two hours.

She was able to do household chores such as sweeping, shopping, mopping, cooking and doing dishes.  She mentioned that she was unable to climb stairs because she got a sensation that her legs were about to give out on her.

Claimant's medications included Albuterol, Meloxicam, Amitriptyline, Nasonex, Lyrica and Hydrocodone/Acetaminophen.  She smoked about one pack of cigarettes per day.  (Tr. 216).  She was 59 inches tall, and weighed 268 pounds. Her blood pressure was 157/99.

On examination, claimant was able to ambulate without difficulty.  She was able to get on and off the exam table, up and out of a chair, and dress and undress herself with no difficulty.

On spine exam, claimant had 2+ pulses, no edema, cyanosis or clubbing, no redness, swelling or effusion, and no foot lesions.  She did not use an assistive device to ambulate, nor was one medically required.  (Tr. 217).

Claimant had normal gross and fine manipulative skills.  Strength was 5/5, and she had a normal finger-to-thumb.  She was able to button and zip her clothes and pick up a coin.  She had no bony deformities, no muscle atrophy, and normal range of motion of the joints.

Range of motion of the upper and lower extremities was normal.  Straight leg raising was normal.  Claimant claimed to be unable to walk on her heels and

toes because of pain in her calf and foot soles.  She was able to squat and perform a heel-to-toe with no difficulty.

Motor strength of proximal muscle groups was 5/5.  Claimant had no unilateral atrophy.  Sensory exam was normal.  Claimant had no neurological deficits, and no evidence of muscle spasms.

**(3) Records from Headache and Pain Center dated August 20, 2009 to April 12, 2010**.  An MRI dated August 20, 2009, showed mild degenerative changes of the lower lumbar spine, including early disc degeneration at L4-5 and mild facet joint arthropathy at several levels; degenerative disc disease with mild disc bulging at T11-12, and no disc herniation or significant spinal stenosis at any lumbar level.  (Tr. 242).

On September 21, 2009, claimant presented with low back and left lower extremity pain.  (Tr. 226).  On examination, she had left lumbar paravertebral tenderness.  The assessment was lumbar radiculitis.  Dr. Adolfo J. Cuadra recommended a caudal route epidural steroid injection.

On October 22, 2009, claimant reported significant improvement of her lower back pain after an injection.  (Tr. 225).  An MRI showed mild facet joint hypertrophy across the L3-4, L4-5 and L5-S1 facets.  Her main complaint was

posterior bilateral lower extremity spasms and cramping, which Dr. Cuadra felt might be related to referred pain from her facet joints.

Dr. Cuadra's impression was symptomatic facet syndrome.  He stated that claimant appeared to present with positive diagnostic response to this particular intervention.  He treated only her most symptomatic side, the left L4-5 and L5-S1 facet.

On December 4, 2009, Dr. Cuadra reported that claimant had had an adequate response to a recent lumbar facet rhizotomy, which helped 75% overall in relieving her pain.  (Tr. 203).  The assessment was lumbar spondylosis.  Her Lyrica was increased, and Ultram and Mobic were refilled.

On March 22, 2010, claimant complained of neck and lower back pain.  (Tr. 253).  She reported being brought to the emergency room one month prior with severe pain, and was later told that it was due to a side effect of anti-depressants. The impression was cervical and lumbar radiculitis, as well as right shoulder bursitis and entrapment-type symptoms.  Dr. Cuadra recommended a injection and Lyrica.

On April 6, 2010, claimant underwent a right shoulder injection, and stated that it had improved a little bit.  (Tr. 234).  She also complained of right-sided neck pain which radiated to her shoulder blade, tingling to her hands, and lower

9

back pain radiating down into the right greater than left lower extremities.  She was taking Lyrica, Mobic, Ultram, and Lortab, but her symptoms persisted.

On examination, claimant had tenderness over the C5-6 through C7-T1 facet joint line.  The remainder of her exam was non-focal without evidence of major neurological deficits.

Dr. Cuadra's impression was cervical spondylosis and radiculitis, lumbar radiculopathy, and myofascial pain syndrome.  He recommended a cervical MRI, facet joint injections on the right, and a trial of physical therapy and pool therapy.

**(4) Records from Bryant Chiropractic Clinic dated May 21, 2010 to January 19, 2011.**[2]  Claimant complained of lumbosacral pain radiating into the feet, severe headaches, and numbness and tingling in the hands.  (Tr. 263-64). Examination revealed positive nerve root compression into the cervical spine, positive straight leg raise test, pain on palpation at the C1, C2 area, dense tissue to the right of C4, C5, and myospasms of the lower right cervical spine and trapezius. (Tr. 274).  Virgil Bryant, D.C. recommended cervical spine long axis traction combined with spinal manipulation three times a week.

---

[2]Physical therapists and chiropractors qualify as "other sources" under 20 C.F.R. § 404.1513(d) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources."  *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

(5) Claimant's Administrative Hearing Testimony.  At the hearing on January 12, 2011, claimant testified that she was 4 feet 11 inches tall and weighed 268 pounds.  (Tr. 35).  She reported that she had last worked for the City of Jeanerette over a year prior.  (Tr. 24).  She testified that she had left that job because she was sick with meningitis.

As to complaints, claimant testified that she had nerve damage, sleep apnea, carpal tunnel syndrome, bronchitis, fibroids and headaches.  (Tr. 25, 32).  She stated that she went to the doctor three days a week for nerve damages in her legs and lower back.  (Tr. 26).  She reported that all but one of the doctors had stopped seeing her because she could no longer afford to pay them.  She stated that she was taking Lyrica and Lortab, but Lyrica made her sleepy.  (Tr. 26, 33-34). She stated that she did not smoke as much as she used to do.  (Tr. 28).

Regarding activities, claimant testified that she drove sometimes.  (Tr. 29). She stated that she did housework and cooked.  (Tr. 29, 35).  She reported that she spent at least half of the day lying down.  (Tr. 30).

(6) The ALJ's Findings.  Claimant argues that: (1) the ALJ's Step Three finding that her impairments did not meet or equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix I, is not supported by substantial evidence; (2) the ALJ's residual functional capacity finding is not supported by substantial

11

evidence, and (3) the ALJ improperly relied solely on the Medical-Vocational guidelines to deny benefits.

As to the first argument, claimant asserts that the ALJ did not identify the listed impairment for which her symptoms fail to qualify, nor did he provide any explanation as to how he reached the conclusion that claimant's symptoms were insufficiently severe to meet any listed impairment, citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  [rec. doc. 8, p. 4].  In *Audler*, the Fifth Circuit found that an ALJ's failure to identify the listing for which the claimant's symptoms failed to qualify or to provide any explanation as to how she made that determination constituted error as " . . . [s]uch a bare conclusion is beyond meaningful judicial review.'" (*quoting Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) (footnote omitted)).

Although an ALJ is not always required to do an exhaustive point-by-point discussion of the evidence, his or her decision must be susceptible of thoughtful court scrutiny.  *Smith v. Astrue*, 2012 WL 3779144, * 17, —  F.Supp.2d —  (E.D. La. Aug. 31, 2012) (*citing Audler*, 501 F.3d at 448).  However, even where a step three violation has occurred, such must be subjected to a harmless error analysis to determine whether the substantial rights of a party have been affected.  *Id*. (*citing Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in

administrative proceedings is not required as long as the substantial rights of a party have not been affected).  That showing typically requires a claimant to demonstrate that her impairment satisfies the criteria of a particular listing.  *Id.* at *17 (*citing Audler* at 448-49).

Here, the ALJ found that claimant had severe impairments of residuals from bacterial meningitis and cervical and lumbar disc disease.  (Tr. 12).  Claimant asserts that these impairments are found at Listings §§ 7.06 (chronic thrombocytopenia), 14.07 (immune deficiency disorders) and 1.00 (musculoskeletal system).

To establish that a claimant's injuries meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment).  *Jordan v. Astrue*, 2012 WL 443791, *3 (W.D. La. Jan. 13, 2012) (Hays, J.), *report and recommendation adopted*, 2012 WL 439626 (W.D. La. Feb. 10, 2012) (*citing Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.1990)).  In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered.  *Id*. (*citing* 20 C.F.R. § 404.1526(c)).  An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify.  *Id*. (*citing Sullivan v. Zebley*, 493 U.S. 521, 530, 110

13

S.Ct. 885, 891 (1990)). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present.  *Id*. (*citing Selders*, 914 F.2d at 620).

In this case, claimant has failed to provide medical findings to support the criteria for the identified impairments.  There is no evidence of chronic thrombocytopenia or immune deficiency disorders in the record.  While claimant did have back and neck complaints, she did not cite the applicable category of musculoskeletal impairment under § 1.00, nor has she demonstrated that she meets the requirements for this listing.  Accordingly, this argument lacks merit.

Next, claimant argues that the ALJ's RFC finding is not supported by substantial evidence because the RFC determination was not based on a medical source statement.  However, the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete. *Gutierrez v. Barnhart*, 2005 WL 1994289, *7 (5th Cir. Aug. 19, 2005) (*citing Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995)).  Instead, the salient issue is whether substantial evidence exists in the record to support the ALJ's decision.  *Id*.

Claimant argues that the ALJ's finding that she could perform the full range of past relevant light work is not supported due to her non-exertional factor of pain.  It is important to note that the test for disability under the Social Security

14

Act is not satisfied merely because plaintiff cannot work without some pain or discomfort.  *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).  Plaintiff must show that she is so functionally impaired that she is precluded from engaging in substantial gainful activity.  *Id*.

Here, the ALJ specifically considered claimant's complaints of pain.  (Tr. 14-15).  He noted that while the evidence showed that she did suffer with discomfort, there was no evidence of swelling, nerve or muscle damage.  (Tr. 15).  He cited findings from her lumbar MRI showing mild degenerative changes of the lower lumbar spine including early disc degeneration at L4-5 and mild facet joint arthropathy at several level, degenerative disc disease with mild disc bulging at T11-12, and no disc herniation or significant spinal stenosis at any lumbar level.  (Tr. 15, 242).   He also observed that her cervical MRI indicated persistent neurodeficits, with feeling of paresthesias and weakness.  (Tr. 15, 196).  However, the MRI showed no significant cord compression.  (Tr. 196).

Pain may constitute a non-exertional impairment that can limit the jobs a claimant would otherwise be able to perform.  *Selders*, 914 F.2d at 618 (*citing Carter v. Heckler*, 712 F.2d 137, 141-42 (5th Cir.1983)).  There must be clinical or laboratory diagnostic techniques which show the existence of a medical impairment which could reasonably be expected to produce the pain alleged.  *Id*.

15

(*citing Hollis v. Bowen*, 837 F.2d 1378, 1384-85 (5th Cir.1988)).  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence.  *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  As the ALJ's pain determination is supported by substantial evidence, it is entitled to deference.

Additionally, the evidence shows that claimant's pain improved with medication and pain management treatment.  (Tr. 162, 164, 168, 203, 225).   If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability.  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).   Thus, this argument lacks merit.

Finally, claimant argues that the ALJ erred by not obtaining vocational expert testimony regarding her ability to failing to perform other work, because she alleged a non-exertional impairment, *i.e*., pain.  However, the regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or her non-exertional impairments do not significantly affect his*

*residual functional capacity*.  (emphasis added).  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2, Section 200.00.  Here, the ALJ determined that claimant's non-exertional impairment of pain did not significantly affect her residual functional capacity. (Tr. 14-16).  Thus, the ALJ's decision not to call the vocational expert is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING**

**THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME**

**AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED***

***SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed July 10, 2013, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent:  RTH
On:  7/10/2013
By:  MBD